## ROBERT ROVASIO *v.* WELLS FARGO ARMORED SERVICES CORPORATION

Superior Court  Judicial District of  File No. CV980062143S
Ansonia-Milford at Milford

Memorandum filed January 30, 2001

*Henry Lyons III,* for the plaintiff.

*Morrison, Mahoney & Miller* and *Danaher, Tedford, Lagnese & Neal,* for the defendant.

NADEAU, J. The present case requires the court to decide whether Robert Rovasio, the plaintiff, a former driver for the defendant, Wells Fargo Armored Services Corporation (Wells Fargo), who was injured on the job, can bring a common-law cause of action against his defendant employer for gunshot wounds suffered at a third party's hand. These wounds were sustained after the defendant allegedly refused to provide the plaintiff with a bulletproof vest, which the defendant's own company policy mandated be worn.

The plaintiff alleges that the defendant intentionally refused to provide him with a bulletproof vest and, as a result, he sustained injuries after being shot by a third party. The plaintiff further alleges that the defendant had a company policy that any employee observed not wearing such a vest would be discharged. The plaintiff received workers' compensation benefits pursuant to General Statutes § 31-275 et seq.

The defendant moves for summary judgment, alleging that the plaintiff cannot seek recourse beyond the compensation scheme because he failed to allege facts to satisfy the tests for exceptions set forth in the *Suarez* decisions, which were heard twice by the Supreme Court. *Suarez* v. *Dickmont Plastics Corp.*, 229 Conn. 99, 639 A.2d 507 (1994) *(Suarez I)*; *Suarez* v. *Dickmont Plastics Corp.*, 242 Conn. 255, 698 A.2d 838 (1997) *(Suarez II)*. "[T]o escape the exclusivity of the act, the victim of an intentional injury must rely on the intended tort theory or the substantial certainty theory. Under the former, the actor must have intended both the act itself and the injurious consequences of the act. Under the latter, the actor must have intended the act and have known that the injury was substantially certain to occur from the act." *Suarez II*, supra, 280. In the present case, the plaintiff claims that he should be deemed to fall within the substantial certainty theory.

In *Suarez I,* the Supreme Court held that the defendant employer's motion for summary judgment could not be granted because there was an issue of fact as to whether the employer's intentional actions created a situation in which the employee's injuries were substantially certain to occur. *Suarez I,* supra, 229 Conn. 111–12. In deciding whether to accept the exclusive remedy provision of the Workers' Compensation Act, the court applied the substantial certainty test stating: "[W]hether the actor knows that the consequences of

his or her conduct are certain or substantially certain to result from his or her act and still proceeds with the conduct, so that he or she should be treated by the law as though he or she in fact desired to produce the result, is a question of fact for the jury. This case undoubtedly raises an issue of material fact regarding the defendant's conduct toward the plaintiff and the defendant's knowledge that the plaintiff's injury was substantially certain to occur." Id., 111.

It has been widely stated that the promotion of workplace safety is the rationale for allowing an employee to go "around" his compensation benefits and pursue his employer. *Ramos* v. *Branford*, Superior Court, judicial district of New Haven, Docket No. 407617 (December 17, 1999) (26 Conn. L. Rptr. 121) (*Blue, J.*). This explanation has a fitting place in illuminating the substantial certainty test (although it seems an obvious truism) but is hardly needed (although also true) to explain the intended tort theory; that is, no "rationale" need be trotted out to explain why tort recovery might be allowed against, say, an employer's intentional battery.

The defendant urges that, usually at least, courts allow ordinary tort recovery only inside the *industrial* workplace. The defendant also urges that courts will not find the "substantial certainty" basis for actions in other jurisdictions where the employer has failed to provide security measures against third party attacks.

Presumably one notion is an expression of the idea that the *industrial* workplace is likely to be filled with dangerous machinery and not filled with outsiders beyond the close control of the employer. See *Hedman* v. *Manger Die Castings Co.*, Superior Court, judicial district of Ansonia-Milford at Milford, Docket No. 970059034S (July 27, 1999) (*Grogins, J.*). It is this thinking which would further explain the failed causes of

action of sales clerks harmed in convenience store holdups.

Recently, a firefighter's death case failed (to withstand the defendant's summary judgment motion) primarily because the burning building in which the firefighter met his tragic death was an inherently unsafe workplace. *Ramos* v. *Branford*, supra, 26 Conn. L. Rptr. 123–24. The defendant's failures were said to be insufficient prefire safety inspections and other inadequate procedures. Id., 121–22.

The present case, while outside the industrial workplace, strictly speaking, and thus one in which traditional tort recovery could not be sought, has, however, facts that are not so clearly beyond the ken or "control" of the employer.

As noted, the plaintiff here was shot by an attacker, presumably an armed robber or a would-be robber. Surely, the conduct, viewed that narrowly, is rather outside the employer's control and might soundly be deemed outside its liability. Here, however, it is said that the employer affirmatively refused to supply the bulletproof vest it had itself strongly mandated be worn; so strongly mandated indeed, that failure to wear it was a firing offense. Thus, while the presence or absence of a vest would not likely in any way influence whether the employee would be shot at, this foreseeable (and actually foreseen) danger (gunplay against money carriers) results in "substantial certainty" of *injury* in gunplay for those without vests.

Thus, it seems correct to say that the substantial certainty of harm following a bad practice by an employer is more akin here to the actionable harm perceived in *Suarez I* (in which the claim would be allowed to go to trial) than to *Ramos* where the firefighter's constant universal jeopardy would seem to march on unabated, regardless of certain safety inspections.

That is, the jeopardy the plaintiff in the *Suarez* cases faced upon being required to reach into a hot, operating machine and the peril the present plaintiff money carrier faced, when denied a vest, are each amenable to employer adjustments and control, with resultant greater safety than would have followed inspections of buildings not yet on fire, such as in *Ramos*. It is this difference that ought to allow the jury to hear the present case together with the *Suarez* decisions, and not the *Ramos* decision.

Money carriers without vests (in the apparent actual view of this defendant, which mandated but then refused to issue vests) it may be asserted, are "substantially certain" to incur personal harm. Not so substantially certain is such harm to those money carriers with vests. Further, if this plaintiff were supplied with a vest and were still wounded, his case would fail, even on summary judgment, as to those of convenience store clerks, who are little, or in no way, protected.

The prospect of armed robbery is the foreseeable constant. The deprivation of the vest is the employer controlled variant, which vastly escalates the substantial certainty of personal injury.

As a result, it is the opinion of this court that the defendant's motion for summary judgment should be denied on that which has been presented thus far. This determination is without prejudice to renewal of such a motion by the defendant should there be evidence that suggests, without factual dispute, that a worker wearing a vest would have suffered the same harm that the plaintiff suffered.